1

2

3

4

5                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
6                             AT SEATTLE

7    JOE CALLAN, et al.,

8                        Plaintiffs,

9              v.                                C11-1340 TSZ

10   MOTRICITY INC, et al.,                      ORDER

11                       Defendants.

12

13          THIS MATTER comes before the Court on the motion of defendants Motricity

14   Inc. ("Motricity"), Ryan K. Wuerch, James R. Smith, Jr., Allyn P. Hebner, James N.

15   Ryan, Jeffrey A. Bowden, Hunter C. Gary, Brett Icahn, Lady Barbara Judge, Suzanne H.

16   King, and Brian Turner (collectively, the "Motricity Defendants") to dismiss, docket

17   no. 114, and the motion of defendants J.P. Morgan Securities, Goldman, Sachs & Co.,

18   Deutsche Bank Securities Inc., RBC Capital Markets Corporation, Robert W. Baird Co.

19   Inc., Needham & Company, LLC, and Pacific Crest Securities LLC (collectively, the

20   "Underwriter Defendants") to dismiss, docket no. 113.  Having considered all papers

21   filed in support of and in opposition to the motions, the Court enters the following Order.

22

23

ORDER - 1

**Background**

By Order dated January 17, 2013, docket no. 101, the Court dismissed plaintiffs' Second Amended Complaint ("SAC"), which alleged claims for securities fraud against the Motricity Defendants and the Underwriter Defendants. The Court subsequently denied plaintiffs' motion for reconsideration. Minute Order (docket no. 103). Plaintiffs have now filed a Third Amended Complaint ("TAC"), which realleges the claims that the Court previously dismissed without prejudice. The TAC adds little to the SAC. For the most part, plaintiffs have merely repackaged the facts alleged in the SAC and recycled their previous arguments, without adding any new substance to their allegations. This Order will therefore focus only on allegations that are unique to the TAC. The analysis and reasoning of the Court's Order of January 17, 2013, docket no. 101, is incorporated by reference and will not be repeated.

Because the parties are familiar with the facts, they are not recited here in great detail. See Order at 3-9 (docket no. 101). On June 17, 2010, Motricity conducted an Initial Public Offering ("IPO"), offering approximately 6 million shares of the company's stock to the public at a price of $10 a share. TAC at ¶¶ 1-2 (docket no. 104). In connection with the IPO, the company issued a Registration Statement and an offering prospectus (collectively, the "Registration Statement"). Id.; see Ex. A to Escobar Decl. (docket no. 116-1). The stock reached a class period high of $30.47 per share in November 2010, before falling precipitously in the second half of 2011. TAC at ¶ 5. On July 11, 2012, shortly before this lawsuit was filed, Motricity stock was trading at $0.61 per share. Id.

ORDER - 2

1    Plaintiffs allege violations of the Securities Act of 1933 and the Securities

2    Exchange Act of 1934 on behalf of themselves and a putative class of shareholders who

3    acquired Motricity common stock traceable to the Registration Statement issued in

4    connection with Motricity's IPO, and/or who purchased or acquired Motricity common

5    stock between June 18, 2010, and November 14, 2011 (the "Class Period").  Specifically,

6    plaintiffs claim that the Motricity Defendants and the Underwriter Defendants negligently

7    prepared and made materially false statements concerning the functionality of Motricity's

8    software product in the Registration Statement.  TAC at ¶¶ 2, 34-40.  Plaintiffs

9    additionally claim that the Motricity Defendants made a number of false and misleading

10   statements during the class period concerning the functionality of Motricity's products

11   and services and falsely claimed that Motricity's contract with XL Axiata was financially

12   healthy and "on track," when it was not.  TAC at ¶¶ 3, 41-73.  Plaintiffs allege that these

13   false and misleading statements were made intentionally or with deliberate recklessness

14   and materially misled the investing public.  Plaintiffs rely on confidential witnesses and

15   allegedly suspicious stock sales by individual defendants, along with the "core operations

16   inference," to argue that the Court may infer scienter.  TAC at ¶¶ 74-94.

17   **Discussion**

18      A.    **Rule 12(b)(6) Standard**

19       To survive a motion to dismiss brought pursuant to Federal Rule of Civil

20   Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is

21   plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In

22   reviewing the adequacy of a complaint, the Court must accept all well-pleaded

23

ORDER - 3

1    allegations as true.  South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 782 (9th Cir. 2008).

2    This tenet, however, is "inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S.

3    662, 678 (2009).  Thus, a pleading that offers only "labels and conclusions" or "a

4    formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S.

5    at 555.  If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to

6    plausible, [the] complaint must be dismissed."  Id. at 570.

7         **B.    Section 11 Claims Against All Defendants**

8         Plaintiffs allege that the Registration Statement contains false and misleading

9    statements concerning the functionality of Motricity's products and omits materially

10   relevant information.  Section 11 of the Securities Act of 1933 creates a private remedy

11   for any purchaser of a security if the registration statement published in connection with

12   the offering "contained an untrue statement of a material fact or omitted to state a

13   material fact required to be stated therein or necessary to make the statements therein not

14   misleading."  15 U.S.C. § 77k(a).  To prevail on a Section 11 claim, a plaintiff must

15   prove "(1) that the registration statement contained an omission or misrepresentation, and

16   (2) that the omission or misrepresentation was material, that is, it would have misled a

17   reasonable investor about the nature of his or her investment."  In re Daou Sys., Inc. Sec.

18   Litig., 411 F.3d 1006, 1027 (9th Cir. 2005).  Section 11 "was designed to assure

19   compliance with the disclosure provisions of the Act by imposing a stringent standard of

20   liability on the parties who play a direct role in a registered offering."  Herman &

21   MacLean v. Huddleston, 459 U.S. 375, 381-82 (1983).  Under Section 11, "[l]iability

22

23

ORDER - 4

1    against the issuer of a security is virtually absolute, even for innocent misstatements," if

2    the plaintiff can show a material misstatement or omission.  Id. at 382.

3         "[W]hether a public statement is misleading, or whether adverse facts were

4    adequately disclosed is a mixed question to be decided by the trier of fact."  Fecht v.

5    Price Co., 70 F.3d 1078, 1081 (9th Cir. 1995).  Thus, a court may only determine the

6    issue of materiality as a matter of law when "the adequacy of the disclosure or the

7    materiality of the statement is 'so obvious that reasonable minds [could] not differ.'"  Id.

8    (alteration in original).

9         Although Section 11 claims do not require an allegation of scienter, Kaplan v.

10   Rose, 49 F.3d 1363, 1371 (9th Cir. 1994), a Section 11 claim that sounds in fraud must

11   satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b).  Daou, 411

12   F.3d at 1027; see also Rubke v. Capitol Bancorp, Ltd., 551 F.3d 1156, 1161 (9th Cir.

13   2009).  For the same reasons discussed in the Court's prior Order, the Court concludes

14   that the TAC "'alleges a unified course of fraudulent conduct' and 'relies entirely on that

15   course of conduct as the basis of [the Securities Act claims],'" and therefore "sounds in

16   fraud."  See Order at 12-13 (docket no. 101) (quoting Rubke, 551 F.3d at 1161; Daou,

17   411 F.3d at 1028).  Plaintiffs' renewed argument that their Section 11 claim is distinct

18   from their Section 10(b) claim, Response at 7-8 (docket no. 119), is without merit.  A

19   party alleging fraud "must state with particularity the circumstances constituting fraud."

20   Fed. R. Civ. P. 9(b).  "In order to allege fraud with particularity, the complaint must both

21

22

23

ORDER - 5

1   identify the allegedly fraudulent statement and explain why it was false when made." <u>In</u>

2   <u>re Metro. Sec. Litig.</u>, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007).[1]

3       Plaintiffs contend that the Registration Statement falsely represented that

4   Motricity's mCore platform provided unlimited access to the Internet to some 35 million

5   mobile phone customers, when in fact the product was used by AT&T, Verizon, and

6   other wireless carriers to provide "walled-garden" access to the Internet through the

7   carriers' custom portal.  Plaintiffs argue that this misrepresentation in the Registration

8   Statement led investors to believe that Motricity's product was on par with the open

9   access smartphones from Apple and Google.  The allegations in the TAC differ little

10  from those of the SAC and plaintiffs' argument is likewise virtually unchanged.  For the

11  reasons articulated in the Court's previous Order, the Registration Statement adequately

12  disclosed to investors that the mCore product was distinct from the emerging smartphone

13  market and that, indeed, Apple and Google's new open access smartphone offerings

14  presented a direct risk to Motricity's business model.  Order at 18-23 (docket no. 101).

15  Specifically, the Registration Statement warned investors:

16      **Open mobile phone operating systems and new business models may**
        **reduce the wireless carriers' influence over access to mobile data**
17      **services, and may reduce the total size of our market opportunity.**

18      The majority of our revenue is based on mobile subscribers accessing
        mobile content and applications through our customers' carrier-branded
19      mobile solutions.  However, with the growth of the iPhone and smartphone
        business models, our customers' services may be bypassed or become
20      inaccessible.  These business models, which exclude carrier participation

21  _____

22  [1] In this case, the Court concludes that even under the less stringent standard imposed by Federal Rule of
    Civil Procedure 8(a), the TAC fails to state a claim under Section 11.

23

beyond transport, along with the introduction of more mobile phones with open operating systems that allow mobile subscribers to browse the Internet and, in some cases, download applications from sources other than a carrier's branded services, create a risk that some carriers will choose to allow this non-branded Internet access without offering a competitive value-added carrier-branded experience as part of their solution set.  These so-called "open operating systems" include Symbian, Blackberry, Android, Windows Mobile, and webOS.  We believe wireless carriers need to offer branded services that can compete head-to-head with the new business models and open technologies in order to retain mobile subscribers and increase ARPU.  Although our solutions are designed to help wireless carriers deliver a high value, competitive mobile data experience, if mobile subscribers do not find these carrier-branded services compelling, there is a risk that mobile subscribers will use open operating systems to bypass carrier-branded services and access the mobile Internet.  It is also possible one or more wireless carriers will adopt a non-carrier branded, third-party web portal model.  To the extent this occurs, the total available market opportunity for providing our current services and solutions to carriers may be reduced.

Registration Statement at 15 (docket no. 116-1 at 20).  This disclosure clearly spells out the information that plaintiffs claim was omitted from the Registration Statement, namely that "the majority of [Motricity's] revenue is based on mobile subscribers accessing mobile content and applications through [its] customers' carrier-branded mobile solutions" and that "with the growth of the iPhone and smartphone business models, [its] customers' services may be bypassed or become inaccessible."

Plaintiffs also allege that the Registration Statement omitted information concerning a "known trend" in Motricity's business that was required to be disclosed under Section 11(h).  A form S-1 registration statement must "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operation."  17 C.F.R. § 229.303(a)(3)(ii).  The TAC alleges that defendants

ORDER - 7

1   were required to disclose information concerning a dramatic shift in control over mobile

2   phone customers away from Motricity's clients, mobile operators, and in favor of device

3   manufacturers such as Apple and Google.  Plaintiffs' claim, that Motricity knew of this

4   shift prior to the IPO and failed to disclose it in the Registration Statement, is based

5   entirely upon a statement by Motricity's Chief Executive Officer ("CEO") Ryan Wuerch,

6   on March 15, 2011, that "[a]bout 14 months ago, we started seeing, the shift happen and

7   quite dramatically in the smartphone business."  TAC at ¶¶ 38-39.  This same claim was

8   alleged in the SAC.  See SAC at ¶¶ 34, 61, 62 (docket no. 82).

9          Plaintiffs' Section 11(h) claim fails because Wuerch's March 15, 2011, statement

10   does not support plaintiff's contention that Motricity knew, almost a year prior, that a

11   "dramatic shift" had already occurred.  As the Court previously recognized, Wuerch's

12   statement was made from the vantage of March 2011.  Order at 16-17 (docket no. 101).

13   Read in context, Wuerch's statement, Tr. at 4-5, Ex. K to Escobar Decl. (docket no. 116-

14   11), fails to support the inference that, at the time the Registration Statement was issued,

15   defendants knew a dramatic shift in market conditions had already occurred.  Rather,

16   Wuerch was discussing the ongoing shift from market control by mobile operators to

17   market control by device manufacturers.  Id.  The alleged omission of this information

18   from the Registration Statement is therefore not actionable.

19          **C.    Section 10(b) Claims Against Motricity Defendants**

20          Plaintiffs bring two claims against the Motricity Defendants under Section 10(b)

21   of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange

22   Commission ("SEC") Rule 10b-5.  They contend that the Motricity Defendants made

23

ORDER - 8

false and misleading statements after the IPO concerning:  (1) the Motricity product's

functionality, and (2) Motricity's contract with XL Axiata.  TAC at ¶¶ 3, 41-73.

Rule 10b-5 makes it unlawful to make "any untrue statement of material fact or to

omit to state a material fact necessary in order to make the statements made, in light of

the circumstances in which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).

In order to prevail on a claim under Rule 10b-5, a plaintiff must show:  (1) a material

misrepresentation or omission; (2) made with a wrongful state of mind (scienter); (3) in

connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and

(6) loss causation.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

Because a complaint that alleges claims under Section 10(b) and Rule 10b–5 must

satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and

the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Zucco Partners, LLC v.

Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009), the complaint must "specify each

statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and, if an allegation . . . is made on information and belief, the complaint

shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–

4(b)(1)(B).  In addition, the PSLRA requires that the complaint "state with particularity

facts giving rise to a strong inference that the defendant acted with the required state of

mind."  15 U.S.C. § 78u-4(b)(2)(A).

### 1.   Confidential Witnesses

Plaintiffs rely upon the statements of five confidential witnesses (denominated as

CW1 – CW5) to support their Section 10(b) claims.  Plaintiffs have augmented their

1  pleading with respect to CW3 and CW4 in response to the Court's previous conclusion

2  that the allegations concerning those witnesses were insufficiently detailed to establish

3  reliability and personal knowledge as required by the PSLRA.  <u>See</u> TAC at ¶¶ 78-79.  In

4  addition, the TAC adds a fifth confidential witness.  TAC at ¶ 84.

5      In order for a complaint to rely on the statements of a confidential witness, the

6  confidential witness must be described with sufficient particularity to establish his or her

7  reliability and personal knowledge, and the statements that are reported by confidential

8  witnesses must themselves be indicative of scienter.  <u>Zucco Partners</u>, 552 F.3d at 995;

9  <u>Limantour v. Cray Inc.</u>, 432 F. Supp. 2d 1129, 1141-42 (W.D. Wash. 2006).  The Court

10  concludes that the TAC describes each of the confidential witnesses with enough

11  specificity to merit the Court's consideration.  Specifically, the TAC has provided

12  additional details of CW3's employment responsibilities, including that he or she

13  investigated, analyzed, and documented the changes that carrier customers made when

14  redesigning their portals.  TAC at ¶ 78.  Similarly, the TAC now lists additional details of

15  CW4's employment, describing that he or she was familiar with Motricity's products

16  because he or she was responsible for updating the news for Verizon's Internet portal.

17  TAC at ¶ 79.

18      CW5 is described as working for Motricity throughout 2011 in global program

19  management, including leading product development, delivery, and launch for

20  Motricity's Asian carrier customers.  TAC at ¶ 84.  According to the TAC, CW5 was

21  responsible for hiring and managing software engineers who were tasked with fulfilling

22  Motricity's Asian contracts.   CW5 claims that the software product that Motricity

23

ORDER - 10

1  provided to its Asian carrier customers "was not what the carriers wanted or expected,"

2  and the Asian carriers were "also dissatisfied with the level of customer detail provided

3  by Motricity's platform."  Id.

4       Because the TAC provides sufficient details about the confidential witnesses'

5  employment at Motricity to establish their reliability and personal knowledge, the Court

6  has considered these statements in assessing plaintiffs' Section 10(b) claims.

7            2.    **Product Functionality**

8       Plaintiffs assert that Motricity misrepresented the functionality of its mCore

9  platform after the IPO by suggesting that the mCore platform provided Internet access

10  on-par with the Internet access provided by smartphones.  See TAC at ¶¶ 41-43, 46, 48.

11  Because plaintiffs' claim relies on the same kind of vague statements that the Court

12  previously characterized as non-actionable "puffery," this claim does not withstand

13  scrutiny.  See Order at 36-40 (docket no. 101).  Specifically, the Court again concludes

14  that what constitutes "all of the best content, applications, widgets and services available"

15  on the Internet, TAC at ¶ 43, is a matter of opinion and is not a statement about the

16  "specific or absolute characteristics" of the software.  Newcal Indus., Inc. v. Ikon Office

17  Solution, 513 F.3d 1038, 1053 (9th Cir. 2008).  This statement is not of the type on which

18  a reasonable investor would rely when considering the total mix of available information.

19  See In re Metawave Commc'ns Corp. Sec. Litig., 298 F. Supp. 2d 1056, 1090-91 (W.D.

20  Wash. 2003).  Similarly, the press release indicating that the mCore MobileCast product

21  was "designed to give smartphone subscribers real-time, zero touch access to all the

22  relevant content, applications, goods and services they care about most, directly to their

23

ORDER - 11

'phonetop,'" TAC at ¶ 46, is not a statement of fact.  Rather, it is exactly the kind of "exaggerated" and "vague" puffery that courts routinely conclude is not actionable under Section 11.  See, e.g., Metawave Commc'ns, 298 F. Supp. 2d at 1090-91; Newcal Indus., 513 F.3d at 1053.

Plaintiffs have added no meat to the bones of their claim that defendants misrepresented the functionality of Motricity's products in various statements by insiders after the IPO.  The Court dismisses the Section 11 functionality claim in the TAC for the same reasons that are articulated in more detail in the Court's previous Order dismissing the SAC.

### 3.   XL Axiata Contract

Plaintiffs' second claim under Rule 10b-5 is that defendants' assurances to investors that Motricity's Asian contracts were "on schedule" and "on track" were false and misleading.  TAC at ¶¶ 57, 59, 61, 65, 72.  The TAC focuses primarily on two statements.  First, the TAC alleges that Weurch's August 2011 conference call concerning the company's second quarter of 2011 financial results included false or misleading statements about the company's progress in Asia.  Specifically, during that call, Weurch stated :

> During Q2, we continued to make progress with current customers in Asia-Pacific, including XL, Celcom, and Reliance.  Starting with XL we recently launched our marketplace mobile storefront ahead of schedule. . . .  In addition to XL, our deployment team successfully rolled out a soft launch of Celcom mobile portal.  This is the third carrier in Asia to be launching on the Motricity platform.  We also released Marketplace for Reliance, which is hosted in our new data center in India.  In short, we continue to execute against our carrier customers' plans and goals. . . .  Specific to XL, nothing is delayed.  In fact, we see XL being right on track.

TAC at ¶ 65.  Additionally, the TAC again points to the statement by Motricity's Interim

CEO Jim Smith on November 14, 2011, that XL "continues to stay on track."  TAC at

¶ 72.

Plaintiffs contend that these reassurances by Motricity that its Asian business was

moving along "on track" and "on schedule" simply could not have been true because, on

January 5, 2012, Motricity announced the cancellation of the XL Axiata contract as of

December 31, 2011, and two weeks later, Motricity announced the cancellation of its

operations in India and the Asia-Pacific region.  See TAC at ¶ 85.  Additionally, plaintiffs

point to a press release on January 24, 2012, announcing XL Axiata's new partnership

with Blaast, a competitor of Motricity.  TAC at ¶¶ 73 & 85.  Plaintiffs argue that the

termination of Motricity's Asian business operation supports a reasonable inference that

Motricity's earlier statements representing that its Asian contracts were "on track" were

false and misleading when made.

The Court rejects plaintiffs' argument that the cancellation of Motricity's Asian

business operation in early 2012 necessarily implies that Weurch's and Smith's

statements in August and November of 2011, respectively, were false when made.  This

argument fails because fraud by hindsight is not actionable.  In re Metawave Commc'ns

Corp. Sec. Litig., 629 F. Supp. 2d 1207, 1219 (W.D. Wash. 2009).  "The fact that [a]

prediction proves to be wrong in hindsight does not render the statement untrue when

made."  In re VeriFone Sec. Litig., 11 F.3d 865, 871 (9th Cir. 1993).  The Ninth Circuit

recently reaffirmed this rule in In re Oracle Corp. Sec. Litig., 627 F.3d 376 (9th Cir.

2010), concluding "the fact that Oracle's forecast turned out to be incorrect does not

1   retroactively make it a misrepresentation."  Id. at 389.  Plaintiffs have not pleaded facts

2   demonstrating that Motricity's Asian contract was not "on track" or "on schedule" when

3   those statements were made.

4        The Court again notes that many courts have deemed statements indicating a

5   company is "on track" too vague to be actionable.  Order at 44 (docket no. 101); see

6   Institutional Investors Grp. v. Avaya, Inc., 564 F.3d 242, 246-59 (3d Cir. 2009); In re

7   Royal Appliance Sec. Litig., 1995 WL 490131 at *3 (6th Cir. 1995).  Although plaintiffs

8   urge the Court to conclude that the "on track" statements in this case are distinguishable

9   from the "on track" statements that other courts have found to be non-actionable, the

10   Court declines this invitation.

11        Finally, the additional allegations of CW5 that the software product that Motricity

12   delivered to the Asian carriers was not what the carriers wanted or expected does not

13   make the statements by Weurch and Smith false.   These allegations might explain why

14   the Asian carriers later cancelled their contracts with Motricity in favor of a different

15   software product, but they do not support plaintiffs' claim that Motricity falsely claimed

16   that its contract was being executed "on schedule" and "on track."

17       **D.**    **Section 15 and Section 20(a) Claims**

18        Section 15 of the 1933 Act and Section 20(a) of the 1934 Act, concerning control

19   person liability, both require proof of an underlying primary violation of the securities

20   laws.  15 U.S.C. §§ 77o & 78t(a); see also No. 84 Emp'r-Teamster Joint Council Pension

21   Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 945 (9th Cir. 2003).  Because the

22

23

ORDER - 14

TAC does not adequately allege primary violations under Section 11 and Section 10(b), the Court GRANTS the Underwriter Defendants' motion to dismiss.

**E.    Dismissal with Prejudice**

Plaintiffs' complaint, docket no. 1, was filed on August 12, 2011; a consolidated complaint, docket no. 43, was filed on December 16, 2011.  After defendants moved to dismiss, plaintiffs were allowed, pursuant to the parties' stipulation, docket no. 62, to amend the consolidated complaint.  Plaintiffs filed their First Amended Complaint, docket no. 66, on May 11, 2012.  Defendants again moved to dismiss, and plaintiffs were again, pursuant to the parties' stipulation, docket no. 81, permitted to amend their pleading.

The Second Amended Complaint, docket no. 82, was filed on July 11, 2012, and defendants promptly moved to dismiss the SAC.  The Court heard oral argument on the motions to dismiss on December 14, 2012, Minutes (docket no. 99), carefully considered plaintiffs' SAC, and issued a 50-page Order, docket no. 101, granting the motion to dismiss, on January 17, 2013.  Plaintiffs' motion for reconsideration, docket no. 102, raised some of the same issues relating to XL Axiata that plaintiffs present in their response to the pending motions to dismiss.  Specifically, plaintiffs' motion for reconsideration focused on Steve Cordial's statements indicating that the XL Axiata and Celcom contracts were "on track" and "on target," respectively, which plaintiffs argued were misleading.  Plaintiffs' motion for reconsideration was denied by Minute Order, docket no. 103, entered on February 7, 2013.  The Third Amended Complaint, docket no. 104, was filed on April 17, 2013, and defendants' motions to dismiss followed.

1    Neither the Registration Statement itself nor the risks disclosed in the Registration

2  Statement have changed since June 17, 2010, when they were filed with the Securities

3  and Exchange Commission.  The allegations in the TAC are essentially the same as those

4  in the SAC, which the Court has previously dismissed.  Plaintiffs' Section 10(b) claims

5  are premised on the basic facts previously analyzed by the Court.  The TAC continues to

6  challenge the same statements about the product functionality and Motricity's XL Axiata

7  contract being "on track," notwithstanding the Court's rejection of these allegations in the

8  Order dismissing the SAC.

9    The Court concludes that plaintiffs' TAC should be dismissed with prejudice.  The

10 TAC repeats, with only minor changes, what the Court has already rejected.  The fact that

11 plaintiffs have failed, in the TAC, to correct the deficiencies identified in the SAC is

12 strong indication that plaintiffs have no additional facts to plead.  In re Vantive Corp.

13 Sec. Litig., 283 F.3d 1079, 1098 (9th Cir. 2002), abrogation on other grounds recognized

14 by South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008).  The Court

15 concludes that plaintiffs' TAC should also be dismissed with prejudice for repeated

16 failures to cure deficiencies and because any further amendment would be futile in light

17 of Motricity's public risk disclosures in the Registration Statement and the nature of the

18 statements at issue.  See Zucco Partners, 552 F.3d at 1007.

19 **Conclusion**

20    The Motricity Defendants' motion to dismiss, docket no. 114, and the Underwriter

21 Defendants' motion to dismiss, docket no. 113, are GRANTED.  Plaintiffs' Third

22 Amended Complaint is DISMISSED with prejudice.  The Clerk is DIRECTED to enter

23

judgment consistent with this Order, to close this case, and to send a copy of this Order to all counsel of record.

Dated this 1st day of October, 2013.

_____
THOMAS S. ZILLY
United States District Judge

ORDER - 17